IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| JEAN PAUL TSHITEYA )<br>)<br>    Petitioner, )<br>)<br>          v. )<br>)<br>JEFFREY CRAWFORD, *et al.*, )<br>)<br>    Respondents. ) | 1:13cv894 (JCC/IDD) |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Petitioner Jean Paul Tshiteya's ("Tshiteya" or "Petitioner") Petition for Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2241. [Dkt. 1.] For the following reasons, the Court will deny Petitioner's Motion.

**I. Background**

This case arises out of the detention by Immigration and Customs Enforcement ("ICE") of Petitioner Tshiteya.

    A.    <u>Factual Background</u>

According to the Petition, Tshiteya is a native of Belgium who the Department of Homeland Security ("DHS") believes to be a citizen of the Democratic Republic of the Congo ("DRC"). (Pet. ¶ 13.) Petitioner moved to the United States with his family in 1984. (Pet. ¶ 14.) The Petition states that Tshiteya

1

entered as a refugee or was granted asylum.  (Pet. ¶ 15.)  On October 1, 1986, Petitioner became a lawful permanent resident.  (Gov't Resp. Ex. 9 [Dkt. 5-1] Trump Decl. ¶ 5.)  Petitioner alleges that since September 22, 2011, he has been in ICE custody.  (Pet. ¶ 18.)

On January 18, 2012, an Immigration Judge ("IJ") ordered Petitioner be removed on grounds that he had been convicted of a crime pursuant to Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii).  This section provides that an alien may be subject to removal from the United States where he has been convicted of: (1) an aggregated felony relating to commercial bribery, counterfeiting, forgery or trafficking in vehicles the identification numbers of which have been altered for which the term of imprisonment is at least one year; (2) a crime of violence for which the term of imprisonment ordered is at least one year; (3) a theft offense for which a term of imprisonment of at least one year was imposed.  (Pet. Ex. 1 [Dkt. 1-1] at 2-3.)  Additionally, Petitioner was subject to removal pursuant to INA § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii), as an alien convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, and INA § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(B)(i) as an alien

convicted of a controlled substance violation. (Pet. Ex. 1 at 2.)

On June 12, 2012, the Board of Immigration Appeals ("BIA") denied Petitioner's appeal and ordered him removed to the DRC. (Pet. ¶ 17.) Petitioner timely filed a petition for review with the United States Court of Appeals for the Fourth Circuit. (Gov't. Resp. Ex. 7 [Dkt. 5-1].) The Attorney General moved the Fourth Circuit to remand the case to the BIA to allow the BIA to: (1) consider a letter and evidence submitted by Petitioner's father alleging that Petitioner would be tortured upon return to the DRC; and (2) to address the designation of the country of removal. (*Id.*) The Fourth Circuit remanded the case to the BIA noting that the Attorney General appeared to be having "second thoughts" about the designation of the DRC. (*Id.*)

On June 3, 2013, the BIA remanded the case to the Immigration Judge. (Trump Decl. ¶ 13.) On June 19, 2013, Petitioner appeared before the IJ and indicated a fear of return to the DRC and requested the opportunity to apply for protection under the Convention Against Torture ("CAT"). (Trump Decl. ¶ 14.) On July 17, 2013, the IJ received Petitioner's 1-589 Application for Asylum, Withholding of Removal and relief under the CAT. The IJ set October 21, 2013 for a merits hearing on

Petitioner's application for protection under the CAT. (Trump Decl. ¶ 15.)

B. Procedural Background

Petitioner filed the instant Petition on July 24, 2013. [Dkt. 1.] Petitioner seeks to be released under ICE supervision. On July 31, 2013, the Court ordered the United States to file a response to the Petition. [Dkt. 2.] On August 30, 2013, Respondents filed a response. [Dkt. 5.] On September 13, 2013, Petitioner filed a reply. [Dkt. 6.]

## II. Analysis

Petitioner contends that his continued detention is not authorized by the Immigration and Nationality Act ("INA") and the Fifth Amendment. The Petition contains two claims. First, Petitioner claims that he has been held for an unreasonable amount of time under Section 241 of the INA, 8 U.S.C. § 1231. (Pet. ¶ 24.) Second, Petitioner claims that he should be released because there is no significant likelihood that he will be removed to the DRC in the foreseeable future and he does not pose a danger to the community. (Pet. ¶ 28.)

A. Detention After a Final Order of Removal

Detention of a deportee after the entry of an administrative order of removal is governed by 8 U.S.C. § 1231(a). This section provides the Attorney General with a "removal period" of up to 90 days to remove a deportee from the

4

country.  *Id.* § 1231(a)(1)(A).  Several events can trigger the start of the "removal period," including, as Petitioner alleges here, the entry of an administratively final order of removal.  *See id.* § 1231(a)(1)(B).

The Government detains the deportee during the "removal period" pending deportation.  *Id.* § 1231(a)(2).  The statute presumes that the Government will deport the detained individual before the 90-day "removal period" ends.  Generally, when an "alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."  *Id.* § 1231(a)(3).  For "inadmissible or criminal aliens," however, the statute allows the Government to continue detention "beyond the removal period."  *Id.* § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that the broad language of § 1231(a)(6) did not bar petitioners from seeking a writ of habeas corpus under 28 U.S.C. § 2241.  *Zadvydas*, 533 U.S. at 687.  To avoid the constitutional difficulties inherent in a grant of authority to detain deportees indefinitely, the Court explained that § 1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States."

5

*Id.* at 689. "It does not," the Court emphasized, "permit indefinite detention." *Id.*

To determine whether the detention of a deportee beyond the 90-day "removal period" under § 1231(a)(6) comports with the Constitution, the Court held, "the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.* at 699. The Court recognized a six-month detention as presumptively reasonable under § 1231(a)(6). *Id.* at 701. After six months have elapsed since the beginning of the "removal period," and "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* The Government could continue to confine an alien "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

*Zadvydas* establishes a two-pronged inquiry to determine whether § 1231(a)(6) allows detention beyond the 90-day "removal period." First, a petitioner must show that he has been held for more than six months after the issuance of the final administrative order of removal. Second, the petitioner must show that there is no significant likelihood of removal in the reasonably foreseeable future. *See Akinwale v. Ashcroft*,

6

287 F.3d 1050, 1052 (11th Cir. 2002); *see also Ali v. Barlow*, 446 F. Supp. 2d 604, 610 (E.D. Va. 2006). Because Petitioner bears this burden, ICE can continue to detain a deportee "until it has been shown that there is no significant likelihood of removal within the reasonably foreseeable future." *Bonitto v. B.I.C.E.*, 547 F. Supp. 2d 747, 754 (S.D. Tex. 2008).

The *Zadvydas* Court posited a sliding scale for what "reasonably foreseeable future" means: the longer the post-removal order confinement, the more stringent a court should be in determining what constitutes the "reasonably foreseeable future." *Zadvydas*, 553 U.S. at 701; *see also Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d. 37, 48 (D.D.C. 2002) (finding that, for a deportee detained for more than three years, "reasonably foreseeable future" meant the point at which the removal would be "truly imminent").

Petitioner filed his Petition on July 24, 2013, claiming that he had been detained under a final order of removal for approximately 180 days. (Pet. ¶ 22.) Petitioner claims that because the Fourth Circuit did not issue a stay of removal, he remains under a final order of removal. The Government argues that Petitioner is not held under a final order of removal. The Government admits that the order of removal originally became final on June 12, 2013, upon the BIA's denial of Petitioner's appeal. (Gov't Resp. at 13.) The

7

Government argues, however, that this order of removal is no longer final. (Gov't Resp. at 13.) When the case was remanded by the Fourth Circuit to the BIA, Petitioner was permitted to present an application for CAT protection. Therefore, the Government argues, no final order of removal exists and Petitioner could not be legally removed from the country.[1] (Gov't Resp. at 14.)

      The Court agrees that Petitioner is no longer under an administratively final order of removal. The Fourth Circuit remanded Petitioner's case to the BIA, which then remanded it to the IJ to address the designation of the DRC as the country of removal. Petitioner has alleged fear of return to the DRC and applied for protection under the CAT. (Gov't Resp. at 13-14.) Because of Petitioner's pending CAT claim, "the remand in this case potentially affects the underlying removal order." *Alam v. Holder,* No. 13-1654, 2013 WL 5943406, at *1 (4th Cir. Nov. 7, 2013) (noting in the context of a remand from the BIA to the IJ to consider withholding of removal or protection under the CAT that "[u]nlike a remand for solely a voluntary departure determination or designation of a country of removal, the remand in this case potentially affects the underlying removal order").

---

[1] On August 28, 2013, the DHS filed a Motion to Vacate the Previous Order of Removal with the Immigration Judge. (Gov't Resp. Ex. 1 [Dkt. 5-1].) DHS requested the court vacate its previous removal order to "ensure procedurally that the respondent that the opportunity to apply for deferral of removal under the CAT, and to clarify that the respondent is no longer under an administratively final order of removal." (Gov't Resp. Ex. 1.)

8

Because the IJ is considering Petitioner's application for deferral of removal under the CAT, which "may directly affect whether he is removed" he is not currently under a final order of removal. *Id.*

Thus, Petitioner is not held pursuant to 8 U.S.C. § 1231; instead he is subject to mandatory detention as a criminal alien pursuant to 8 U.S.C. § 1226(c)(1)(B).

    B.   <u>Detention Pending a Final Order of Removal</u>

Section 1226(c) provides, in relevant part:

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who --

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c). Petitioner is subject to mandatory detention under § 1226(c)(1)(B) for having committed offenses covered in § 1227(a)(2)(A)(iii), § 1227(a)(2)(A)(ii), and § 1227(a)(2)(B)(i). (*See* Gov't Resp. Ex. 4.)

  C. <u>Petitioner is not Unreasonably Detained</u>

Moreover, even if Petitioner were held under a final order of removal, his detention is not unreasonable. 8 U.S.C. § 1231(a)(1)(C) provides that "the removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien . . . acts to prevent the alien's removal subject to an order of removal." Petitioner's removal has been delayed in order to permit him to present a CAT claim after he initially failed to file an application for deferral of removal under the CAT. The delay in Petitioner's removal is due to his current position that he would be tortured upon removal to the DRC.

Additionally, Petitioner argues that he should be released because there is no reasonable likelihood of removal to the DRC. The Government contends that to the contrary, a reasonable likelihood of deportation to the DRC does exist and that ICE has deported individuals to the DRC in both 2012 and 2013. (Gov't Resp. at 16.) The Government has submitted the Declaration of Samuel Hartfield, which states that 17 aliens

were removed to the DRC in 2012 and 18 aliens were removed to the DRC in 2013. (Gov't Resp. Ex. 2 [Dkt. 5-1].)

Petitioner has not met his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future. Courts have found that removal was not "reasonably foreseeable" in situations where no country would accept the detainee, the country of origin refused to issue proper travel documents, the United States and the country of origin did not have a removal agreement in place, or the country to which the deportee was going to be removed was unresponsive for a significant period of time. *See Nima v. Ridge*, 286 F. Supp. 2d 469, 475 (E.D. Pa. 2003). Petitioner's deportation, by contrast, has been delayed in order to allow him to apply for CAT protection; if his CAT application is denied, Petitioner stands to be deported to the DRC. Thus, even if petitioner were detained under § 1231, his detention is not unreasonable.

### D. Due Process

Petitioner also argues that his continued detention violates the Due Process Clause of the Fifth Amendment. Given the Court's conclusion that Petitioner is subject to mandatory detention pursuant to Section 1226(c), this argument fails. *See Demore v. Kim*, 538 U.S. 510, 531 (2003) (holding that mandatory detention prior to the entry of a final order of removal under

11

Section 1226(c) does not violate protections guaranteed under the Constitution).

### IV. Conclusion

For these reasons, the Court will deny Petitioner's motion.

An appropriate order will issue.

December 16, 2013  
Alexandria, Virginia

/s/  
James C. Cacheris  
UNITED STATES DISTRICT COURT JUDGE